MORGAN, Appellant,

v.

MORGAN, Appellee.

[Cite as *Morgan v. Morgan* (1998), 127 Ohio App.3d 142.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 96 BA 1.

Decided March 31, 1998.

*Gregg R. Lewis,* for appellant.

*John A. Vavra,* for appellee.

VUKOVICH, Judge.

This appeal stems from a decision of the Common Pleas Court of Belmont County, Ohio, wherein that court denied the motion of the appellant either to terminate his obligation to pay spousal support to the appellee or to offset against the spousal support obligation the sum of $105,000, which the appellee withdrew from a joint bank account two years after the marriage of the parties had been terminated pursuant to a dissolution of marriage.

We are of the opinion that the action of the trial court was erroneous as a matter of law, that the error was prejudicial to the appellant, and that the interest of justice mandates that we reverse the judgment of said court for the reasons set forth below.

## Facts

The appellant (John H. Morgan) and the appellee (Tammy D. Morgan) were married on June 18, 1982. On May 21, 1992, the Morgans executed a separation agreement pursuant to R.C. 3103.06. On July 13, 1992, the trial court approved the aforementioned separation agreement and granted a dissolution of marriage to the Morgans that incorporated the agreement into its judgment as orders of the court.

The separation agreement of the Morgans contained the following provisions relevant to this appeal:

"(1) *Alimony* (Section II). The appellant-husband was to pay the appellee-wife the sum of $1,000 per month for 12 months commencing in June, 1992; and the sum of $300,000 payable in six annual installments of $50,000 commencing on January 15, 1993.

"(2) *Personal Property* (Section III). All personal property of the parties has been already divided to their mutual satisfaction, and each shall keep those items of personal property in their respective possessions.

"(3) *Bank Accounts* (Section VI). Each party shall receive any accounts presently held in their individual names, free and clear of any claims of the other party. Any and all joint accounts of the parties have already been divided between the parties."

Despite the language in the separation agreement that all joint bank accounts "have already been divided between the parties," it is clear from the record that the parties had a joint bank account with the Westbanco Bank at Barnesville, Ohio, at the time they each executed said agreement. Moreover, it is uncontroverted that said account remained in the joint names of the parties until at least the end of August 1994—even though the marital relationship of the parties had terminated on July 13, 1992.

Additionally, the record further discloses the following significant factors in regard to the aforementioned joint account of the parties:

"(1) At the time the parties executed their separation agreement (i.e., May 21, 1992) the balance in their Westbanco account was either $4,634.60 (Transcript, p. 39) or $7,632.92 (Judgment, Jan. 26, 1995, P. 3).

"(2) From May, 1992 forward, the appellee made no deposits and/or transfer of funds into said account.

"(3) On August 24, 1994, the appellee wrote and endorsed a check drawn on the Westbanco account in question in the amount of $105,000, and wrote on the memo line: 'Friends forever, right?' "

On October 17, 1994, the appellant filed a motion requesting the trial court either to terminate the spousal support obligation of the appellant to the appellee or, in the alternative, to set off against said obligation the $105,000 withdrawn from the Westbanco account by the appellee on August 24, 1994.

The aforementioned motion came on for hearing, whereupon the trial court issued a judgment on Jan. 26, 1995, which stated:

"[P]rior to the marriage [of the parties] the petitioner, John H. Morgan, entered into an oral agreement with the petitioner, Tammy D. Morgan, that due to the fact that he was disabled he would pay the said Tammy D. Morgan $800.00 per month for household services performed."

The trial court then apparently multiplied $800 times the months the parties were married (nine years, eleven months, or one hundred nineteen months times $800) and stated that the appellee was entitled to receive $95,200 pursuant to the oral premarital "agreement" of the parties. The court then concluded that the appellant was, therefore, "granted a setoff of $9,800 on * * * [his] next alimony payment," this sum representing the difference between the sum of $105,000

withdrawn by the appellee and the sum of $95,200 deemed by the court to be due said appellee pursuant to the oral premarital agreement of the parties.

On February 9, 1995, counsel for the appellant filed a motion with the trial court for a judgment notwithstanding the verdict or a motion for a new hearing, purportedly as permitted by Civ.R. 50 and 60.

On February 28, 1995, the appellant filed a notice of appeal of the final order issued by the trial court on January 26, 1995. The appeal was dismissed by this court as being untimely filed on March 15, 1995.

On March 20, 1995 and after granting leave to appellant to amend its February 9, 1995 motion instanter, the trial court sustained appellant's request to move for a new trial and granted "another hearing limited to the $800 per month payments."

The hearing was held on December 11, 1995 and on December 13, 1995, the court issued a judgment that stated in its entirety:

"The motion of petitioner, John H. Morgan, heard on December 11, 1995 is overruled. The court's decision of January 26, 1995 shall stand."

In response thereto, the appellant filed with the trial court "a request for findings of fact and conclusions of law" on December 21, 1995 and a notice of appeal filed on January 2, 1996. On January 26, 1996, the trial court filed a judgment that overruled, without comment, the aforementioned request of appellant for findings of fact and conclusions of law.

## Jurisdictional Issue

Because this court has already dismissed the appeal by the appellant of the judgment issued by the trial court on January 26, 1995 upon the ground that said appeal was not timely filed, and because the instant case before this court is an appeal of a judgment rendered by the same trial court that reaffirmed the same judgment that was the subject of appellant's prior appeal, we *sua sponte* address the issue of jurisdiction. In other words, can an appellate court properly decide an appeal that attempts to come in through the back door when the front door has been barred by a jurisdictional defect?

While we cannot find a reported case involving the identical facts of the case at bar, we embrace the reasoning set forth in *McCue v. Buckeye Union Ins. Co.* (1979), 61 Ohio App.2d 101, 15 O.O.3d 103, 399 N.E.2d 127, to begin our analysis. In *McCue*, the appeal from the judgment of the trial court was dismissed by the court of appeals for being untimely filed. Thereafter, the trial court vacated its judgment and then reissued the same judgment. The appellant then filed his notice of appeal within thirty days from the date that the trial court reissued its judgment.

The appellate court stated in its syllabus:

" * * * Where a court vacates and reenters its own judgment *sua sponte* and without explanation or demonstration in the record that its action is permitted by Civil Rule 60(A) or (B), it will be presumed that the court acted solely to accommodate a party by extending the normal period for appeal. In such case the time for appeal begins to run from the time at which the original judgment was entered, and not from the time of vacation and reentry of the same judgment."

Although the court in *McCue* was dealing with Civ.R. 60 and not Civ.R. 59 as found in the instant appeal, the logic set forth in that decision transcends the factual difference and is dispositive of the dilemma facing this court. Accordingly, we hold that where an appeal is dismissed for being untimely filed and a trial court subsequently readopts its judgment after granting leave to untimely file a Civ.R. 59 motion for a new trial, it will be presumed that such an action does not confer a new thirty-day period to file an appeal. However, such a presumption may be rebutted if the totality of the facts and circumstances clearly indicates that the action of the trial court was adversarial, addressed the merits of the cause of action, and was not an accommodation to resurrect an untimely filed, dismissed appeal. See *McCue, supra.*

Here, the record clearly indicates that the proceedings in the trial court subsequent to the dismissal of appellant's appeal by this court were adversarial and addressed the merits of the cause of action, as evidenced by the transcript of the hearing held by the trial court on December 19, 1995. Accordingly, the presumption of an accommodation contemplated in *McCue* is rebutted by the facts set forth in the record.

Furthermore, we note that in the event the trial court would have refused to grant leave to the appellant to file a motion for a new trial outside the time frame set forth in Civ.R. 59, it is unlikely that this court would have jurisdiction to hear the appeal in this case. See App.R. 4; Civ.R. 59; *R–H–L Advertising Co. v. Americo Wholesale Plumbing Supply Co.* (1980), 69 Ohio App.2d 61, 23 O.O.3d 67, 430 N.E.2d 472. However, since the trial court exercised its discretion to grant leave to the appellant and disposed of the motion for a new trial on its merits in an adversarial proceeding, this court is entitled to review the merits as well. See *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898. Therefore, we may now address the merits of appellant's appeal.

## Assignments of Error

Appellant cites four assignments of error, which may be stated as follows:

1.  The trial court abused its discretion in overruling appellant's amended motion for a new trial;

2.  The judgment of the trial court which permitted the appellee to retain $95,200 pursuant to an alleged premarital oral contract between the parties is incorrect as a matter of law, against the manifest weight of the evidence, and was an abuse of discretion;

3.  The trial court incorrectly allocated to the appellant the burden of proof on appellee's defense that she had taken $105,000 from appellant due to an alleged oral agreement of the parties; and

4.  The trial court erred in overruling appellant's request for findings of fact and conclusions of law, in support of the court's overruling of appellant's motion for new trial.

## Discussion

Implicit in the first three of appellant's assignments of error is a definition of the proper role of a trial court in a post-dissolution modification of property proceeding. On the one hand, there is a series of cases which are limiting in nature and stand for the proposition that a division of property is clearly not subject to post-decree modification. See *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413; *Leonti v. Leonti* (1983), 8 Ohio App.3d 129, 8 OBR 185, 456 N.E.2d 584. In *Anderson v. Anderson* (1984), 13 Ohio App.3d 194, 197, 13 OBR 242, 245, 468 N.E.2d 784, 788, the court noted that "a domestic relations court lacks jurisdiction to modify a property division in a separation agreement which has been incorporated into a decree of dissolution of marriage." Moreover, and as stated by the court in *Ashley v. Ashley* (1981), 1 Ohio App.3d 80, 83, 1 OBR 359, 363, 439 N.E.2d 911, 915:

"The issue here is whether a court, sitting under the authority of the dissolution statutes of R.C. 3105.61 *et seq.,* can impose new terms of alimony and division of property without the consent of the parties. We hold that it cannot. Mutual consent to the separation agreement was one of the two essential elements required for a valid judgment of dissolution. After vacating judgment on the original separation agreement due to incomplete disclosure, the court was obligated to dismiss the petition for dissolution previously granted and leave the parties where it found them. To set aside the agreement is to set aside the dissolution. To hold otherwise is to permit these dissolution statutes (R.C. 3105.61 *et seq.*) to circumvent the divorce laws by initially accepting the parties' agreement to the dissolution and separation agreement, and, after the issuing of the decree, allowing one of them to repudiate such agreement. For the court to modify the separation agreement on a matter over which it does not retain jurisdiction amounts to granting a divorce without proof of any statutory ground for divorce.

We believe that this was not the intention of the legislature, nor will we construe the dissolution statutes in this manner." (Footnote omitted.)

On the other hand, it has been noted that "[w]here there is good faith confusion over the requirements of the dissolution decree, a court has the power to enforce its decree, to hear the matter, clarify the confusion, and resolve the dispute." *Bond v. Bond* (1990), 69 Ohio App.3d 225, 228, 590 N.E.2d 348, 350, citing *Saeks v. Saeks* (1985), 24 Ohio App.3d 67, 70, 24 OBR 122, 124–125, 493 N.E.2d 280, 282–283. Moreover, the trial court has broad discretion to clarify ambiguous language by considering the intent of the parties and the equities involved. See *Bond,* 69 Ohio App.3d at 227, 590 N.E.2d at 349, and *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

■ In the instant appeal, the parties executed a separation agreement that made no reference whatsoever to an alleged premarital oral agreement between the parties. Accordingly, there can be no legitimate claim that the trial court subsequently acted to clarify a confusion over ambiguous terms, since the terms did not exist in the separation agreement. Nor can it be claimed that the trial court acted to enforce a provision that does not exist. Moreover, the separation agreement of the parties does not expressly reserve the jurisdiction of the trial court relative to any future division of property, which necessitates a conclusion that the trial court did not have jurisdiction to modify the terms of the property division of the parties. See, *e.g., Colley v. Colley* (1989), 43 Ohio St.3d 87, 89–90, 538 N.E.2d 410, 411–413.

■ In addition to the modification issue, the trial court erroneously allowed extrinsic evidence to be presented regarding the alleged oral agreement reached between the parties prior to the execution of the separation agreement, which is prohibited by the parol evidence rule. In *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 440, 662 N.E.2d 1074, 1080, the Supreme Court of Ohio explained the parol evidence rule as follows:

" 'The Parol Evidence Rule was developed centuries ago to protect the integrity of written contracts.' * * * The parol evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements. * * * 'When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.' " (Citations omitted.) See, also, *Charles A. Burton, Inc. v. Durkee* (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E.2d 265.

Moreover, when the agreement of the parties is integrated into an unambiguous, written contract, courts should give effect to the plain meaning of the parties' expressed intentions. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 544 N.E.2d 920, syllabus. Intentions not expressed in the writing are "deemed to have no existence" and may not be shown by parol evidence. *Id.* at 53, 544 N.E.2d at 923, citing *Charles A. Burton, Inc. v. Durkee* (152), 158 Ohio St. 313, 49 O.O. 174, 109 N.E.2d 265, at paragraph two of the syllabus. However, evidence of a collateral oral contract may be admissible so long as it does not conflict with the written contract and it covers a subject matter distinct from, though closely related to, the express subject matter of the written contract but is not embodied in the written contract itself. *Sparhawk v. Gorham* (1956), 101 Ohio App. 362, 1 O.O.2d 305, 139 N.E.2d 652.

In the instant case, the substance of the alleged oral agreement between appellant and appellee was clearly within the scope of the integrated separation agreement. The separation agreement related to all aspects of appellant's and appellee's property. If an oral agreement had been made before the marriage, and appellee relied on the oral promise, then she should have included the terms of that promise in the written separation agreement, instead of absconding with appellant's money two years after the dissolution of the marriage.

The language of the separation agreement is clear and unambiguous. The fact that appellant and appellee included the statement in the separation agreement that "any and all joint accounts of the parties have already been divided between the parties," and yet one bank account containing between $4,634.60 to $7,632.92 (the record is not clear as to this issue) remained undivided, merely shows an oversight on the part of appellant and appellee. Regardless, the trial court improperly imputed the terms of the alleged oral promise to the terms of the separation agreement, which it was prohibited to do pursuant to the parol evidence rule.

We, therefore, must conclude that the trial court lacked the authority to modify a property division of the parties as set forth in their separation agreement relative to the alleged oral agreement that was first mentioned in a post-dissolution proceeding some two years after the termination of the marriage. That being the case, the trial court abused its discretion and the judgment of the trial court filed on January 26, 1995 was incorrect as a matter of law. Therefore, appellant's first two assignments of error have merit.

Due to our conclusion relative to the first and second assignments of error, appellant's third assignment of error is moot.

Finally, we may briefly address the last of appellant's assignments of error relative to the trial court's entry on January 22, 1996, which overruled

without comment appellant's request for findings of fact and conclusions of law. Civ.R. 52 states:

"When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ.R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law.

"When a request for findings of fact and conclusions of law is made, the court, in its discretion, may require any or all of the parties to submit proposed findings of fact and conclusions of law; however, only those findings of fact and conclusions of law made by the court shall form part of the record.

"Findings of fact and conclusions of law required by this rule and by Rule 41(B)(2) are unnecessary upon all other motions including those pursuant to Rule 12, Rule 55 and Rule 56.

"An opinion or memorandum of decision filed in the action prior to judgment entry and containing findings of fact and conclusions of law stated separately shall be sufficient to satisfy the requirements of this rule and Rule 41(B)(2)."

Here, the trial court announced its decision on December 13, 1995. Appellant's request for findings of fact and conclusions of law was filed on December 24, 1995. Therefore, the appellant did not file his request within the seven-day period contemplated by Civ.R. 52. While the provisions of this rule are generally mandatory on facts such as we have on this appeal, we cannot find that the trial court abused its discretion in summarily rejecting an untimely filed request for findings of fact and conclusions of law. Accordingly, appellant's fourth assignment of error is not meritorious.

## Conclusion

For the reasons set forth above regarding appellant's first and second assignments of error, which are meritorious, the judgment of the trial court filed on January 26, 1995 is hereby reversed and remanded to said court. The trial court is instructed to hold a further proceeding with respect to two factual issues. First, the court must determine the balance in the Westbanco account at the time the separation agreement was entered into on May 21, 1992. Second, the court must determine how appellant and appellee divided their other joint bank accounts in order to grant appellant the appropriate offset against his spousal support obligation. This offset shall be determined by dividing between appellant and appellee, in the same manner that they divided their other bank accounts, that amount in the Westbanco account at the time the separation

agreement was entered into, and then subtracting the amount appellee was entitled to from that account from $105,000, with the balance representing appellant's offset against his spousal support obligation. In so doing, the trial court will not be modifying the property division in the separation agreement which was incorporated into the decree of dissolution of marriage, but will instead be enforcing the provision regarding joint bank accounts found in the separation agreement. See *In re Dissolution of Marriage of Seders* (1987), 42 Ohio App.3d 155, 156–157, 536 N.E.2d 1190, 1192–1193. Therefore, the intentions of the parties with respect to their separation agreement will be upheld and the decree of dissolution of marriage will remain intact.

*Judgment accordingly.*

Cox and WAITE, JJ., concur.