OPINION *Page 2 
{¶ 1} Defendant-appellant Randall Vild appeals the decision of the Columbiana County Municipal Court which entered judgment against him in favor of plaintiff-appellee Performance GMC. The issues raised on appeal are whether appellant's motion for findings of fact and conclusions of law was timely and whether the trial court's decision was against the manifest weight of the evidence. For the following reasons, the trial court could rationally refuse to issue findings of fact and conclusions of law, and the trial court's decision on the merits was not contrary to the manifest weight of the evidence. As such, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} On April 23, 2007, Performance GMC filed a small claims complaint against both Lauren Kyle and appellant Randall Vild. The complaint alleged that Ms. Kyle purchased a 2002 Chevrolet Trailblazer from Performance GMC on March 16, 2006 but that the $1,500 cash down payment was never received. Appellant was named a defendant because he was the salesperson to whom Ms. Kyle claimed she handed an envelope containing the $1,500 cash down payment. Attached to the complaint was the buyer's order which showed that Ms. Kyle agreed to pay over $16,000 for the vehicle and over $2,000 for warranties. She ended up financing $18,899.25 with $1,500 cash due at delivery.
 {¶ 3} A trial to the court was held on May 25, 2007. Performance GMC and appellant were represented by counsel, and Ms. Kyle appeared pro se. The dealership's general manager explained that two months after the purchase, they were balancing the books and realized that they had never received the down payment. (Tr. 15). He testified that when he called Ms. Kyle, she agreed to provide a copy of the canceled check used for the down payment. (Tr. 10-11). He said that he called her numerous times thereafter and was eventually advised that she paid in cash. (Tr. 11, 13). The general manager explained that when a customer pays in cash, the *Page 3 
dealership policy is to enter the transaction in a receipt book that generates three copies: one for the customer, one for the book and one for the deal jacket. (Tr. 14).
 {¶ 4} Appellant then testified that if a person pays cash, the salesperson generally receives the money and passes it on for receipt into the system. (Tr. 20). He claimed that he did not receive this $1,500 from Ms. Kyle. (Tr. 22). He also claimed that Ms. Kyle was upset with him due to a personality clash, and thus, she dealt with the general manager for the conclusion of her transaction. (Tr. 25). When the court asked how a customer could drive a vehicle off the lot without paying the down payment, he responded that this is not unusual but that most dealerships use a promissory note system where this procedure is permitted. (Tr. 22-23, 25-26). He also theorized that Ms. Kyle had good credit and was likely allowed to leave on the assumption that she would return with the down payment. (Tr. 24).
 {¶ 5} Ms. Kyle testified that after signing the paperwork, she went home to get the $1,500 cash down payment (available due to their recent $1,680 income tax refund) and a voided bank check which was to be used by the finance company for automatic bank withdrawals. (Tr. 31). Her husband returned to the dealership with her to drive their car home, and a friend came along to browse. (Tr. 28-29). Ms. Kyle testified that she gave appellant an envelope containing her $1,500 cash down payment and the voided blank check. (Tr. 31). She refuted appellant's testimony that the general manager took over the sale. (Tr. 32).
 {¶ 6} Ms. Kyle explained that the confusion over whether she paid by cash or check was the result of an unclear and mean telephone call from the general manager. (Tr. 28, 35-36). She believed he was referring to the voided check she brought in with her down payment. (Tr. 28, 35). She also explained that she was not concerned with getting the receipt described in the general manager's testimony since she believed she already received a receipt in that the buyer's order stated $1,500 cash on delivery and was signed by herself and the finance manager. (Tr. 29, 32).
 {¶ 7} Rather than announce its decision from the bench, the trial court took the matter under advisement. Still, the court filed a judgment entry on May 25, 2007, the same day as the trial. The court entered judgment against appellant for $1,500 and dismissed the case against Ms. Kyle with prejudice. *Page 4 
 {¶ 8} On June 22, 2007, appellant filed a timely appeal with this court and simultaneously filed a motion for findings of fact and conclusions of law in the trial court. Appellant's counsel claimed that neither she nor her client received notice of the May 25, 2007 judgment until she was contacted by counsel for Performance GMC on June 15, 2007. On June 25, 2007, the trial court denied the motion concluding that under Civ. R. 52, it had to be filed prior to the May 25, 2007 judgment or within seven days of the court's decision.
 {¶ 9} On appeal, appellant purports to set forth one assignment of error arguing that the trial court erred in denying the motion for findings of fact and conclusions of law under Civ. R. 52. However, he then divides the brief into two different arguments: one arguing that his motion was timely under Civ. R. 52 and one arguing that the court erred in denying his motion because the judgment against him was against the manifest weight of the evidence.
 {¶ 10} Although the lack of findings of fact and conclusions of law seemingly does not actually inhibit our review of whether the judgment was against the manifest weight of the evidence, it has been held that where weighing of evidence is required on appeal, a movant is prejudiced by the failure to issue findings and conclusions (as opposed to the lack of prejudice where only pure legal issues are raised on appeal). SeeSt. Paul Fire Marine Ins. Co. v. Battle (1975), 44 Ohio App.3d 261,267-268. Thus, we must address the timeliness issue before proceeding to address weight of the evidence.
 TIMELINESS OF MOTION {¶ 11} Appellant urges that his motion for findings and conclusions was timely because neither appellant nor his counsel received a copy of the May 25, 2007 judgment entry. Defense counsel states that he did not become aware of the judgment until June 15, 2007 when plaintiff's counsel contacted him to inquire if he ever received the entry from the clerk's office because plaintiff's counsel did not receive a copy until asking the clerk two times. Plaintiff's counsel then faxed the entry to defense counsel. Defense counsel waited exactly seven days from receipt of the fax to file the motion for findings and conclusions and thus states that filing within seven days from receiving actual notice of the decision was timely. On appeal, *Page 5 
appellant attaches to his brief affidavits from defense counsel swearing to these facts and a copy of the dated fax.
 {¶ 12} Appellant contends that the June 22, 2007 entry denying his motion for findings and conclusions was erroneous because the trial court stated that the motion had to be filed before judgment or within seven days of the court's decision, whereas Civ. R. 52 states before judgment or within seven days after being given notice of the court's announcement of its decision. Appellant believes that the use of "notice" in the rule means the day he or his counsel actually, consciously received notice. He cites an Eleventh District case which could be read as standing for this proposition. See State v. Hayes (June 15, 2001), 11th Dist. No. 2000-A-0025 (where the defendant claimed he received a December 28 judgment in the mail on February 8 and where the court found the motion for findings and conclusions untimely because even assuming he did not receive the entry until February 8 his February 22 motion was not filed within seven days of notice).
 {¶ 13} Appellee's brief merely discloses that plaintiff's counsel received a copy of the judgment entry from the court on June 13, 2007 and that he faxed it to appellant's counsel on June 15, 2007, without mentioning when he telephonically advised appellant's counsel of the entry.
 {¶ 14} We begin by setting forth the exact language of Civ. R. 52:
 {¶ 15} "When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ. R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law."
 {¶ 16} Related to providing notice of decisions, Civ. R. 58 provides in pertinent part:
 {¶ 17} "(A) * * * upon a decision announced * * * the court shall promptly cause the judgment to be prepared and, the court having signed it, the clerk shall thereupon enter it upon the journal. A judgment is effective only when entered by the clerk upon the journal. *Page 6 
 {¶ 18} "(B) Notice of filing[.] When the court signs a judgment, the court shall endorse thereon a direction to the clerk to serve upon all parties not in default for failure to appear notice of the judgment and its date of entry upon the journal. Within three days of entering the judgment upon the journal, the clerk shall serve the parties in a manner prescribed by Civ. R. 5(B) and note the service in the appearance docket. Upon serving the notice and notation of the service in the appearance docket, the service is complete. The failure of the clerk to serve notice does not affect the validity of the judgment or the running of the time for appeal except as provided in App. R. 4(A)."
 {¶ 19} Here, the judgment was entered on the journal on May 25, 2007. The court endorsed a direction to the clerk to serve the parties. On the same day that the judgment was filed, the clerk noted in the appearance docket that copies were issued to counsel. Thus, there is no issue of lack of endorsement or lack of the clerk's notation in the appearance docket.
 {¶ 20} The questions are essentially: (1) whether being given notice of announcement of the court's decision under Civ. R. 52 means journalization and issuance of notice under Civ. R. 58 or whether it means actual notice consciously received and/or (2) whether and how a party can contest the clerk's claim that notice was properly issued.
 {¶ 21} The Supreme Court has held that the trial court's judgment entry can be considered the announcement of its decision. L.T.M.Builders Co. v. Village of Jefferson (1980), 61 Ohio St.3d 91, 95. Still, this does not specifically deal with whether the announcement is the same as "be[ing] given notice of announcement" as per Civ. R. 52. On this topic, the Fourth District has held that notice of judgment is complete upon mailing for purposes of Civ. R. 52. Wise v. City ofGallipolis (Nov. 19, 1990), 4th Dist. No. 89CA25.
 {¶ 22} Similarly, the Eighth District's position is that if a decision is not announced earlier (such as in open court), then "notice of the court's announcement of its decision" as used in Civ. R. 52 refers to the mere journalization of the court's judgment entry. Newman v. Indus.Glove Cleaning Co. (1986), 34 Ohio App.3d 41, 42. In other words, if the court does not announce its decision before it is journalized, *Page 7 
the journalized order constitutes the announcement. 3910 WarrensvilleCtr., Inc. v. City of Warrensville Hts. (1984), 20 Ohio App.3d 220, 223. See, also, Professional Bus. Syst., Inc. v. Koba (May 5, 1983), 8th Dist. No. 45406 (where judgment was filed on April 23 and copies sent to the attorneys within three days on April 26, notice of the announcement occurred on April 23 for purposes of the time trigger). The Eighth District has also ruled that a self-serving affidavit stating that notice was not received until months after judgment was entered is insufficient to rebut the presumption of notice where the docket shows issuance of such notice within three days of the judgment. State ex rel.Ormond v. Solon, 8th Dist. No. 82553, 2003-Ohio-5654 (but dealing with time for filing notice of appeal).
 {¶ 23} In determining the timeliness of a motion for findings and conclusions, this court's past cases generally cite to the date the entry was filed for beginning the seven-day count. See, e.g., GrengaMach. Welding v. Manganaro (June 13, 2002), 7th Dist. No. 01CA193 (motion was considered untimely where filed ten days after judgment was filed); Morgan v. Morgan (1998), 127 Ohio App.3d 142 (where we found that the day the judgment entry was filed is the day the court announced its decision for purposes of Civ. R. 52 and upheld trial court's refusal to address motion filed eight days after journalization); D'Amico v.D'Amico (July 17, 1998), 7th Dist. No. 94CA218 (motion was found untimely where it was filed fifteen days after decision was file-stamped).
 {¶ 24} Admittedly, none of these cases out of our district contained a movant's specific claim that time does not begin until actual notice is received or a claim that the clerk's notice never arrived. Still, we have repeatedly made statements of the law as if the date of the judgment is the proper trigger regardless of the date of eventual receipt. In a similar manner, the Supreme Court has also utilized the date of the judgment as the date of the time trigger under Civ. R. 52 without referencing any exception for receipt issues. State ex rel.Drake v. Athens Bd. of Elec. (1988), 39 Ohio St.3d 40, 40-41.
 {¶ 25} If appellant's argument is correct, then the time within which a motion for findings and conclusions must be filed is a personal matter, known only by the movant, and dependent upon when he claims that he actually, physically or consciously *Page 8 
received the notice. This would place a great burden on trial courts in disposing of what appear to be untimely motions for findings of fact and conclusions of law.
 {¶ 26} In any event, even if a party can attempt to rebut the docket's statement that notice was issued in a timely manner, appellant here can be characterized as failing to sufficiently rebut the presumption contained in the docket. That is, as for his timeliness argument, appellant's motion merely claimed that neither defense counsel nor the defendant received notice of the May 25, 2007 judgment entry until contacted by plaintiff's counsel on June 15, 2007. Although appellant's counsel attached her own affidavit on appeal, no affidavits were attached to the motion before the trial court; nor did appellant seek a hearing on the matter. Thus, the trial court was not presented with proper evidence. See Wainey v. Hollymatic Corp. (Apr. 27, 1995), 8th Dist. No. 66998 (mere allegation that party did not receive notice of judgment is not a sufficient offer of evidence to show that service was not properly made).
 {¶ 27} Furthermore, appellant advised this court that plaintiff's counsel also did not receive the notice; however, appellant did not disclose this claim to the trial court. "A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." State v. Ishmail (1978), 54 Ohio St.2d 402, ¶ 2 of syllabus. See, also, State v. Coleman (1999), 85 Ohio St.3d 129, 133.
 {¶ 28} Even if we were to consider appellee's brief to contain a stipulation (arguably allowing us to overlook the lack of proof presented to the trial court), it essentially states that no partyphysically received the entry until June 13. (As aforementioned, appellant waited until exactly seven days from the June 15 fax to file his motion.) In fact, plaintiff's counsel bolded this June 13 date as if to distinguish it from June 15. The statements in appellee's brief do not concede when actual notice was provided to the parties. In fact, appellant disclosed that plaintiff's counsel informed her that he did not receive the entry until he asked the clerk twice. Thus, it seems clear that plaintiff's counsel had actual notice of the entry prior to physical receipt on June 13.
 {¶ 29} Appellee's counsel does not stipulate as to when appellant's counsel had actual notice of the entry. Confirming that he faxed a copy of an entry to appellant's *Page 9 
counsel on June 15, 2007 does not stipulate that appellant did not receive his own copy from the clerk on June 13 or oral notice prior to June 15. Although appellant's counsel states that plaintiffs counsel first called him about the entry on the same day as the fax, appellee's counsel does not confirm that the call took place on June 15. As such, any stipulations in appellee's brief do not answer the crux of the matter, even assuming we can consider the date of actual notice. For all of these reasons, we overrule appellant's first argument and proceed to address the weight of the evidence.
 MANIFEST WEIGHT OF THE EVIDENCE {¶ 30} Appellant argues that the judgment is not supported by any evidence, let alone the competent and credible evidence required for upholding civil judgments. He contends that Ms. Kyle's testimony contains many inconsistencies and shows that her truthfulness is questionable. For instance, he disbelieves Ms. Kyle's claimed confusion as to why she gave the general manager the impression that she paid the down payment by check but later stated that she paid cash. He wonders why her husband and a friend did not testify to support her claim that they came back with her to bring the down payment. He criticizes the difference in her initial testimony that she assumed the business office was closed when she came back at 7:00 p.m. and her subsequent testimony that the finance manager was with someone else when she returned with the down payment.
 {¶ 31} Civil judgments supported by some competent, credible evidence going to the material elements of the case will not be disturbed as being against the manifest weight of the evidence. Shemo v. MayfieldHts. (2000), 88 Ohio St.3d 7, 10, citing C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279. In reviewing the trial court's judgment, every reasonable presumption is made in favor of that judgment and the court's findings of fact. Id., citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77. The trial court is in the best position to judge the credibility of the witnesses by viewing voice inflection, demeanor, and gestures. Seasons Coal, 10 Ohio St.3d at 80.
 {¶ 32} Appellant must remember that the trial court need only have found his liability by a preponderance of the evidence. See Estate ofAlkhaldi v. Khatib, 7th Dist. *Page 10 
No. 04MA285, 2005-Ohio-6168, ¶ 85. This is not a criminal theft case requiring proof beyond a reasonable doubt, which could very well be found lacking here.
 {¶ 33} The trial court could rationally believe the general manager's claim that the dealership never received the $1,500 down payment. In fact, appellant does not seem to dispute this claim below or on appeal by claiming for instance that he passed the money on to the next office as per proper procedure and thus the dealership's records are erroneous or that some other employee converted the money. Rather, his position is that Ms. Kyle never provided him with the $1,500 in cash. The court was thus faced with choosing between his credibility or reliability and that of Ms. Kyle.
 {¶ 34} As to her general credibility, Ms. Kyle disclosed that she offered to take a polygraph. The general manager confirmed this offer but explained that his counsel advised that it would not be admissible in court. Contrary to his explanation, they could have accepted her offer with a signed stipulation that any results would in fact be admissible. Brown v. Best Prod., Inc. (1998), 18 Ohio St.3d 32, 35
("Absent an agreement between the parties polygraph tests are not a generally accepted method of proof.") In any event, the trial judge was in the best position to study her demeanor as she testified and to gauge her truthfulness.
 {¶ 35} As for the specific complaints of inconsistencies, Ms. Kyle's explanation of the confusion surrounding her telephone conversation with the general manager about whether she could provide him with a check was not incredible. That is, along with her cash down payment, she testified that she brought in a voided check for purposes of automatic withdrawal of future payments. No one disputes that she provided this voided check at the time. The general manager's "angry" reference to a canceled check in a rushed telephone call could reasonably invoke thoughts of the voided check.
 {¶ 36} Other claimed inconsistencies in Ms. Kyle's testimony cannot be judged by this court as requiring judgment for appellant on their face. For instance, Ms. Kyle made a statement that she assumed the business office was closed when she returned but later stated that the finance manager was with another customer when she returned. (Tr. 30, 32). This testimony is vague, and the supposed conflict was not developed below to ensure actual inconsistency. For instance, we cannot assume *Page 11 
there is no distinction between the office, which other testimony suggested was in another building, and the finance manager's location. We also cannot determine if her testimony meant that she originally assumed the office would be closed but then noticed that it was open but occupied or whether her testimony in fact means what appellant attributes to it.
 {¶ 37} In conclusion, the trial court believed that Ms. Kyle handed $1,500 in cash to appellant and that he never turned it over to the dealership. Although we may not have ruled similarly, we cannot say that the trial court's judgment was contrary to the manifest weight of the evidence. Consequently, this argument is overruled.
 {¶ 38} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
 DeGenaro, P.J., concurs. Waite, J., concurs. *Page 1